(C. D. 490)

ALBERS BROS. MILLING CO. *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided May 6, 1941)

*Lawrence & Tuttle (George R. Tuttle* of counsel) for the plaintiff.
*Charles D. Lawrence,* Acting Assistant Attorney General *(Richard F. Weeks,* and *Frank X. O'Donnell, Jr.,* special attorneys), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; KEEFE, J., not participating

EVANS, Judge: This is an action against the United States in which the plaintiff seeks to recover money collected and paid as customs duties on an importation of a commodity invoiced as mixed feed (95 per centum soya bean cake meal English style ACETCO brand and 5 per centum corn meal). The collector assessed duty on the merchandise at the rate of three-tenths of 1 cent per pound under the provisions of paragraph 730 of the Tariff Act of 1930 for soybean oil cake meal. The plaintiff claims that the commodity is properly dutiable as mixed feeds at 10 per centum ad valorem under the same paragraph and, alternatively, in an amendment to the pleadings, that it is dutiable at 10 cents per 100 pounds under the same paragraph as bran, shorts, etc., by virtue of the similitude clause in paragraph 1559 of the same act, or at 10 per centum ad valorem under paragraph 731 as screenings.

The respective paragraphs are as follows:

PAR. 730. Bran, shorts, by-product feeds obtained in milling wheat or other cereals, 10 per centum ad valorem; hulls of oats, barley, buckwheat, or other grains, ground or unground, 10 cents per one hundred pounds; dried beet pulp, malt sprouts, and brewers' grains, $5 per ton; soy bean oil cake and soy bean oil-cake meal, three-tenths of 1 cent per pound; all other vegetable oil cake and oil-cake meal, not specially provided for, three-tenths of 1 cent per pound; mixed feeds, consisting of an admixture of grains or grain products with oil cake, oil-cake meal, molasses, or other feedstuffs, 10 per centum ad valorem.

PAR. 731. Screenings, scalpings, chaff, or scourings of wheat, flaxseed, or other grains or seeds: Unground, or ground, 10 per centum ad valorem: *Provided,* That when grains or seeds contain more than 5 per centum of any one foreign matter dutiable at a rate higher than that applicable to the grain or seed the entire lot shall be dutiable at such higher rate.

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article, which it most resembles in any of the particulars before mentioned; and if any nonenumerated article equally resembles two or more enumerated articles on which different rates of duty are chargeable, there shall be levied on such nonenumerated article the same rate of duty as is chargeable on the article which it resembles paying the highest rate of duty; and on articles not enumerated, manufactured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of

chief value; and the words "component material of chief value," wherever used in this Act, shall be held to mean that component material which shall exceed in value any other single component material of the article; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article. If two or more rates of duty shall be applicable to any imported article, it shall be subject to duty at the highest of such rates.

The plaintiff introduced the testimony of two witnesses in support of its claims.

A similar if not identical commodity was before this court in the case of *Walter Johnson* v. *United States*, 62 Treas. Dec. 473, T. D. 45975, in which it was held that the commodity was excluded from the provision in said paragraph 730 for "mixed feeds, consisting of an admixture of grains or grain products with oil cake, oil-cake meal, * * * or other feedstuffs." This decision was affirmed on appeal and reported in 21 C. C. P. A. 129, T. D. 46464. The court there said:

A fair construction of the statute is that the language "mixed feeds," as appearing therein, does not mean that any product is comprehended within the meaning of said terms which comprises a mixture of substances which, in themselves, might be used as components of feeds, but it should rather be construed to mean, as held by the court below, a product which, in itself, as imported, is fit for use as an animal feed.

The court further said:

The court below heard the witnesses, and under the law, might judge of the credibility of their testimony and the weight to be given thereto. Having done so, and having concluded that the imported material, under the testimony, could not be used as a feed, as imported, the judgment of the court will not be disturbed, unless it is clearly contrary to the weight of the evidence. We are unable to find that such is the case.

The record in the case now before us shows that the instant commodity is used both alone, as a feed, and as a component of other feeds; that the admixture of 5 per centum corn meal would not prevent its being used in the same manner as if such corn meal had not been added. The testimony further shows that soybean oil cake meal with 5 per centum corn meal has a higher protein content than bran, shorts, and the various byproducts of milling which are used as components of mixed feeds, and also higher than the protein content found in screenings, scalpings, chaff, etc. The witnesses both stated that the principal use is as a component rather than a straight feed; that for all practical purposes the admixture could be used in about the same way as soybean oil cake meal.

No testimony was produced in rebuttal.

While the witnesses produced on behalf of the plaintiff testified that the instant product could be used as a feed as imported, the predominant use is shown to be as a component part of feed, as stated above. Both witnesses agreed that this commodity is used to raise the pro-

tein content of grains and other feeds. The experience of these two witnesses was not shown to have extended over all of the United States but apparently was confined to one section of the country, the Northwest.

Plaintiff claims that if not dutiable directly, the instant commodity is dutiable by similitude under the provisions of paragraph 1559, *supra,* to "bran, shorts, byproduct feeds obtained in milling wheat or other cereals," or to "screenings, scalpings, chaff, or scourings of wheat, flaxseed, or other grains or·seeds." We think that if the merchandise is dutiable by similitude, it is similar to soybean oil cake meal, as assessed, rather than to the commodities enumerated by the plaintiff. The witnesses in their testimony as to the instant commodity were discussing in almost all instances "soybean oil cake meal", and the fact that the product here involved contained 5 per centum corn meal seemed to be of little consequence in their opinion. For instance, the witness Cox testified that the presence of the corn meal "would not prevent" the importation from being used for any purpose for which soybean oil cake meal is used. The witness Clulow stated that the addition of 5 per centum corn meal "would not destroy" the use of soybean oil cake meal. It would seem, therefore, from this record that the corn meal content is inconsequential so far as the use of the commodity is concerned.

We think upon the whole record that the plaintiff has failed to overcome the presumption of correctness attaching to the collector's classification and that the evidence produced fails to convince us that our earlier finding on this same kind of merchandise, which was affirmed in the *Johnson* case, *supra,* is erroneous or aganist the weight of the evidence.

We therefore overrule the plaintiff's contentions. Judgment for defendant. It is so ordered.